UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

VARIA HOLDINGS LLC,

        Plaintiff,   **MEMORANDUM AND ORDER**
                                  23-CV-7477 (RPK) (RML)
   v.

APPLE INC.,

        Defendant.
------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    Varia Holdings LLC brought this action against Apple Inc. alleging that defendant infringed three of plaintiff's patents. *See* Compl. 1 (Dkt. #1). Defendant has moved to transfer this case to the Northern District of California. *See* Def.'s Mot. to Transfer (Dkt. #71-1). For the reasons that follow, the motion to transfer is denied.

## BACKGROUND

    The following facts are taken from the parties' pleadings and accompanying declarations.

    Plaintiff alleges that, in March 2013, its representatives met with Apple representatives to discuss plaintiff's technology related to the use of nearfield communication and radio-frequency identification communication. Compl. ¶¶ 2, 41. At the meeting, Varia presented slides about its patent portfolio, including U.S. Patent Nos. 8,127,984 ("the '984 Patent") and 8,381,974 ("the '974 Patent"). *Id.* ¶¶ 42, 59–60. While Varia had not been issued a third patent—U.S. Patent No. 9,405,947 ("the '947 Patent")—at the meeting, it presented a slide noting that it had filed two continuation applications on the '974 patent, and the subsequently issued '947 patent is one of those. *Id.* ¶ 61.

Before the meeting, the parties entered into a non-disclosure agreement, or "NDA," that prohibits each company from using or disclosing confidential information shared by the other at the meeting. Decl. of Brian Rosenthal, Ex. 1 ("NDA") 1 (Dkt. #71-3). The agreement also states that plaintiff's providing defendant with confidential information relating to the patents at the meeting "shall not be used in any manner against Apple in any subsequent litigation involving such patents, . . . including, but not limited to, notice for the purposes of alleging patent infringement or knowledge of infringement for the purpose of establishing willful infringement." *Id.* at 3.

As to choice of law, the NDA provides that it "will be governed by and construed in accordance with the laws of the State of California, excluding that body of California law concerning conflicts of law." *Id.* at 2. The parties also agree "to the exclusive jurisdiction of and venue in any of the following forums: U.S. District Court for the Northern District of California, California Superior Court for Santa Clara County, or any other forum in Santa Clara County, for any litigation arising out of this Agreement." *Id.* at 2–3.

According to plaintiff, defendant declined to license or purchase the technology plaintiff presented and disclaimed any plans to include the patented technology in its future products. Compl. ¶ 47. Nonetheless, plaintiff alleges, defendant began launching products eighteen months later that incorporated and infringed the '984, '974, and '947 patents. *Id.* ¶ 48. Plaintiff alleges that defendant has used this infringing technology in its Apple Pay system across a range of Apple devices. *Id.* ¶¶ 49–52.

In 2023, plaintiff filed a three-count patent infringement complaint. The three counts accuse defendant of infringing, respectively, the '984, '974, and '947 patents. *Id.* ¶¶ 70–129. Plaintiff alleges that defendant's infringement was willful on the theory that defendant "had

2

knowledge or should have had knowledge" of the infringed patents, based on (1) the March 2013 meeting and (2) the fact that defendant is "a large technology company" that "was developing technology and applying for patents in the same field" and "routinely monitored patents, patent applications, non-patent literature, and press related to those fields." *Id.* ¶¶ 61–64. Plaintiff seeks damages for willful infringement under 35 U.S.C. § 284. Compl. ¶ 85.

In December 2024, defendant filed counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that plaintiff violated the NDA by making allegations against defendant based on the March 2013 meeting. *See* Answer 27–45 (Dkt. #59).

In February 2025, defendant filed a motion seeking to transfer this case to the Northern District of California, invoking the forum-selection clause of the NDA. *See* Def.'s Mot. to Transfer. Plaintiff opposes, arguing that the forum-selection clause does not apply to its claims and that defendant has waived its transfer argument. *See* Pl.'s Resp. (Dkt. #71-10). Plaintiff also argues that defendant's argument is precluded by the decision in *Valencell, Inc. v. Apple Inc.*, No. 16-CV-1-D (JCD), 2017 WL 2819768 (E.D.N.C. June 28, 2017), a case involving the same defendant and similar contractual language, in which the court found the forum-selection clause inapplicable.

**LEGAL STANDARD**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiff does not dispute that this lawsuit could have been brought in the Northern District of California. *See* Pl.'s Resp. Accordingly, the propriety of transfer under Section 1404(a) depends on the convenience of parties and witnesses and the interests of justice. *See Equal Emp. Opportunity Comm'n v. St. Charles Hous., LP*, No. 23-CV-6436 (RPK) (PK),

3

2025 WL 35945, at *2 (E.D.N.Y. Jan. 6, 2025).  The moving party bears the burden of establishing "a strong case for transfer" by "clear and convincing evidence."  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010) (citation omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  Because enforcement of valid forum-selection clauses promotes the interest of justice, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," and "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* 63–64 (citation omitted); *see Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) ("If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.").

Where, as here, "a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability of the forum selection clause." *Marrtinez v. Bloomberg LP*, 740 F.3d 211, 214 (2d Cir. 2014).  As both parties agree, because the parties chose California law to govern the NDA, California law governs the interpretation of the contract's forum-selection clause.  *See* Def.'s Mot. to Transfer 15–16; Pl.'s Resp. 12; NDA 2–3.

## DISCUSSION

The motion to transfer is denied because the forum-selection clause in the NDA does not apply to plaintiff's claims.  Defendant contends that this case must be transferred because the NDA stipulates to venue in the Northern District of California "for any litigation arising out of this

4

Agreement." NDA 3. But this forum-selection clause does not apply to plaintiff's claims because they do not arise under the NDA. Defendant therefore fails to meet its burden to show that transfer is warranted. *See Atl. Marine Constr. Co.*, 571 U.S. at 63–64.

Under California law, litigation "aris[es] under" a contract when the plaintiff's claims are "inextricably intertwined with the construction and enforcement of the [contract]" and the "controversy ha[s] its origin in a single, contract-based relationship." *Olinick v. BMG Ent.*, 42 Cal. Rptr. 3d 268, 279 (Cal. Ct. App. 2006) (quoting *Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1154 (Cal. 1992) (applying a similar interpretation to a choice-of-law clause)). Applying this standard, the court in *Olinick* held that a plaintiff's wrongful-termination claim arose out of an employment contract even though the plaintiff did not bring a breach-of-contract claim, since the dispute originated from the contractual relationship. 42 Cal. Rptr. 3d at 278–79. The court emphasized that the entire dispute "ar[ose] out of the transaction or relationship" formed by the employment contract. *Id.* at 277 (citation omitted); *cf. Nedlloyd*, 834 P.2d at 1154 (holding that defendant's duties "ar[o]se from" the contract because they could "exist only because of" the contract).

Plaintiff's claims do not arise under the parties' NDA. Plaintiff alleges that defendant infringed plaintiff's patents in violation of federal law, not that defendant breached duties originating from the NDA. Indeed, plaintiff's claim of willfulness does not necessarily rest on information disclosed at the meeting covered by the NDA, because the willful-infringement requirement that defendant had "knowledge that the [infringing] acts constitute patent infringement," can be satisfied by a showing of willful blindness. *Global-Tech Appliance, Inc. v. SEB S.A.*, 563 U.S. 754, 766–68 (2011). Accordingly, plaintiff alleges not only that defendant had actual knowledge of its patents because of the 2013 meeting discussed in the NDA, but also that

5

defendant had the required *mens rea* because "Apple was developing technology and applying for patents in the same field" and "routinely monitor[ing] patents, patent applications, non-patent literature, and press related to those fields." Compl. ¶¶ 63–64; *see id.* ¶ 67. More importantly, to the extent that plaintiff's willfulness claims are premised in part on disclosures made at the 2013 meeting, the willfulness claim still does not arise out of the NDA or any duties it establishes; the NDA is instead only relevant as a defense to plaintiff's reliance on the 2013 meeting to show defendant's knowledge and willfulness. In sum, while plaintiff's claims have some connection to the meeting that is governed by the NDA, they do not "origin[ate] in a single, contract-based relationship" and thus do not arise under the NDA. *Olinick*, 42 Cal. Rptr. 3d at 277.

The court in *Valencell* reached the same conclusion on analogous facts.* Analyzing a materially identical NDA forum-selection clause, the *Valencell* court held that the plaintiff's willful-infringement claims failed to bring a patent-infringement "action within the scope of the . . . forum-selection clause." 2017 WL 2819768, at *2. The court noted that "[n]umerous courts have held that 'arising out of' forum-selection clauses are narrower than forum-selection clauses that cover, for example, litigation 'arising out of or related to' an agreement, or 'arising out of or in connection with' an agreement." *Id.* at *1. Whereas "[t]he former apply to disputes that involve the interpretation, performance, or non-performance of an underlying contract[,] the latter apply more broadly to claims with substantial relationships to an underlying contract." *Ibid.* The *Valencell* court predicted, "based on the weight of precedent from other courts, that California

---

* Although *Valencell* is persuasive authority, it does not, as plaintiff contends, preclude defendant's transfer argument. Issue preclusion applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002) (quoting *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998)). Critically, "[w]hen the facts essential to a judgment are distinct in the two cases, the issues in the second case cannot properly be said to be identical to those in the first," "even if they involve the same legal issues." *Env't Def. v. EPA*, 369 F.3d 193, 202 (2d Cir. 2004). Here, plaintiff's action and the *Valencell* action do not share all facts essential to the judgment. Each case turns on the application of the choice-of-forum clause to the plaintiff's specific claims.

6

courts would interpret the clause the same way." *Ibid.*  Accordingly, the fact that "the parties spoke with each other pursuant to a confidentiality agreement does not bring within the scope of an 'arising under' forum-selection clause any cause of action for which the facts include the parties' communications." *Id.* at *2.  While defendant notes that the operative *Valencell* complaint did not mention the "meetings . . . covered by the confidentiality agreement," Def.'s Reply 5 (Dkt. #71-31), whereas the complaint in this case does mention such a meeting, that distinction matters little, because *Valencell* made clear that its holding encompassed the willful-infringement claims at hand even if the facts underlying the claims did "include the parties' communications" covered by the NDA.  2017 WL 2819768, at *2.

The cases on which defendant relies to support transfer are inapposite.  *Dodocase* and *Truinject* involved breach-of-contract allegations that naturally implicated the forum-selection clause within those contracts.  *See Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930, 932, 934–35 (Fed. Cir. 2019); *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 18-CV-1851 (JLS) (JDE), 2019 WL 1449641, at *3, 6 (C.D. Cal. Mar. 28, 2019).  *Direct Mail* held that a contractual forum-selection clause applies "if 'the gist' of [plaintiff's] claims is a breach of that relationship," but as explained above, that is not the case here.  *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 99-CV-10550 (SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (citation omitted).  *ErGo Media* and *Lambert* are similarly inapposite because they applied contractual forum-selection clauses only to tort claims that involved "the same operative facts as a parallel claim for breach of contract."  *ErGo Media Cap., LLC v. Bluemner*, No. 15-CV-1377 (LGS), 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) (citation and quotation marks omitted); *accord Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir. 1993).  And as discussed, *Olinick* held that "arising under" language applied to claims that are "inextricably intertwined with the construction and enforcement of the

7

[contract]" and "origin[ate] in a single, contract-based relationship." 42 Cal. Rptr. 3d at 279 (citation omitted).

Other cases on which Apple relies are inapposite because they involved broader forum-selection clauses. For example, *Tessera* involved a forum-selection clause applying to "[a]ny disputes or claims alleging a breach of this Agreement *or relating to the interpretation of this Agreement*." *Tessara Advanced Techs., Inc. v. Samsung Elecs. Co.*, No. 17-CV-671 (JRG), 2018 WL 8014281, at *2 (E.D. Tex. Sept. 5, 2018) (emphasis added). The NDA here does not contain such broad language. And *Nedlloyd*, on which defendant relies for the proposition that a forum-selection clause applies to "*all* disputes arising out of the transaction or relationship," did not involve a contract with "arising out of" language. *See* 834 P.2d at 1154 (contract stating generally that "each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts").

The fact that defendant brought counterclaims for breach of the NDA does not change the calculus. True, the forum-selection clause covers defendant's breach-of-contract counterclaims, which arise out of the NDA and may be litigated in the Northern District of California. But defendant is not, as it contends, "forced to litigate these counterclaims in isolation" in the Northern District of California. Def.'s Mot. to Transfer 18. Rather, defendant is free to litigate its counterclaims in this Court, in light of plaintiff's consent to do so. *See* Pl.'s Resp. 17–18.

Defendant's cited cases—purportedly showing that an entire case must be transferred when counterclaims are governed by a forum-selection clause—do not stand for this proposition. In *Cohan v. Acme Lift Co. L.L.C.*, the case was transferred because *both* claims and counterclaims fell within the forum-selection clause. No. 20-CV-11075 (CCC), 2021 WL 1625098, at *3–4 (D.N.J. Apr. 27, 2021). *Rice v. Envoy Air Inc.* involved a transfer that was made "irrespective of"

8

the forum-selection clause. No. 19-CV-340 (OLG), 2019 WL 13253797, at *4 (W.D. Tex. May 9, 2019). And in *Cortese v. Evolve Bank and Trust*, the court transferred the case only after determining that multiple private interest factors weighed in favor of transferring plaintiff's claims, including ease of access to sources of proof and cost of attendance for willing witnesses. No. 15-CV-622-D (SAF), 2015 WL 3539587, at *7–8 (N.D. Tex. June 5, 2015). No such arguments were made by defendant here.

## CONCLUSION

For the foregoing reasons, defendant has failed to meet its burden to show that transfer is warranted under 28 U.S.C. § 1404(a). Accordingly, defendant's motion to transfer is denied.

SO ORDERED.

                                                             /s/ Rachel Kovner
                                                   RACHEL P. KOVNER
                                                   United States District Judge

Dated: April 8, 2025
      Brooklyn, New York